UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRY M.,

          Plaintiff,

        v.                                     **DECISION AND ORDER**
                                                  20-CV-814S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.        Plaintiff Terry M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security benefits under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed his application for benefits on September 11, 2015. (R.[2] at 102.) Plaintiff alleged disability beginning on September 11, 2014, due to herniated discs 2, 3, 4, 5, and 6 in his back, inability to walk or stand very long, inability to bend or lift, right knee surgery in 2013 and knee giving out, and carpal tunnel syndrome. (R. at 103-04.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). A hearing before ALJ Eric Glazer on October 19, 2017, was adjourned so Plaintiff could obtain more evidence. (R. at 65-101.) Plaintiff did not appear at a subsequent hearing before ALJ Melissa Lin Jones on September 20, 2018.

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

(R. at 51-64.) ALJ Stephan Bell then held a hearing on March 20, 2019, which Plaintiff, accompanied by his attorney, attended. (R. at 32-50.) At the time of the hearing, Plaintiff was 55 years old, with a high school education and prior work experience as a cook, housekeeper, plastic cutter, and stockboy. (R. at 109, 373.)

3.  The ALJ considered the case de novo and, on March 27, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 15-24.) On April 30, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on June 29, 2020, challenging the Commissioner's final decision.[3]

4.  Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11, 13.) Plaintiff filed a response on August 16, 2021 (Docket No. 14), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

---

[3] The ALJ's March 27, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful

4

activity since his application date of September 11, 2015. (R. at 17.) The ALJ found that Plaintiff has the following medically determinable impairments: right knee status post chondroplasty and partial lateral meniscectomy; degenerative disc disease of the cervical spine; right forearm tendinitis; mild carpal tunnel syndrome; alcohol dependence; vision changes; colonic diverticulitis; and coronary artery disease. (Id.)

11.  At step two, the ALJ found that Plaintiff does not have any severe impairment or combination of impairments. (R. at 18.) Therefore, the ALJ found that Plaintiff is not disabled. (R. at 24.)

12.  Plaintiff argues that the ALJ erred in failing to find any of his impairments to be severe. Defendant argues that the ALJ's severity determination is supported by substantial evidence.

13.  An impairment or combination of impairments is "severe" at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). In contrast, an impairment is "not severe" if the medical evidence clearly establishes it has no more "than a minimal effect on an individual's physical or mental ability to do basic work activities[.]" SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); accord SSR 96-3p, 1996 WL 374181, at *1-2 (July 2, 1996); see also James C. v. Comm'r of Soc. Sec., 2020 WL 103813, at *4 (D. Vt. Jan. 9, 2020) ("An impairment is 'not severe' when medical evidence establishes 'only a slight abnormality ... [,] which would have no more than a minimal effect on [the claimant's] ability to work.'") (alterations in original) (quoting SSR 85-28, 1985 WL 56856, at *3).

14.  Examples of basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking;

understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28.

15.   "The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe." Tanner v. Comm'r of Soc. Sec., No. 515CV577TJMATB, 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016), report and recommendation adopted, No. 515CV577TJMATB, 2016 WL 3190227 (N.D.N.Y. June 7, 2016) (citing Hamilton v. Astrue, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013); see also McConnell v. Astrue, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008) ("The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe.") (quoting Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995)). Further, "[u]nless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least [twelve] months." 20 C.F.R. § 404.1509. "It is the [Plaintiff's] burden to show at step two that [s]he has a 'severe' impairment or combination of impairments[]" …"for a continuous period of at least 12 months." James C. 2020 WL 103813, at *4.

16.   Here, the record demonstrates that Plaintiff experienced neck and arm pain. But the record does not demonstrate that either of these issues significantly limited his functioning. As for cervical spine issues, the diagnoses of cervical radiculopathy and herniated cervical intervertebral disc are present in the record. (See, e.g., R. at 604, from September 27, 2017, R. at 609, February 16, 2018.)  An MRI from February 26, 2018 diagnosed him with retrolisthesis of C5 over C6 and multilevel degenerative changes. (R.

at 616.) Yet office and emergency room visit notes often do not note any musculoskeletal issues. (See, e.g., R at 474, 521, 539, 542, 593.) On March 15, 2018, Plaintiff demonstrated pain with flexion of his neck, but had full range of motion in his neck and back and normal strength, tone, and symmetry in his upper and lower extremities. (R. at 614.) On June 18, 2018, Dr. Warren Rogers noted that Plaintiff had full neck flexion without pain, 75% extension with neck pain, bilateral rotation full to the right and 75% to the left with pain. (R. at 498.) Plaintiff walked without a limp. (Id.) On August 24, 2018, Plaintiff was seen for bowel issues and a finger nodule. No mention was made of neck pain and Mercedes Barber noted a steady gait. (R. at 679.) On December 3, 2018, Plaintiff was seen for sinus issues. No mention of neck pain was made. (R. at 699.)

17.  In an ADL questionnaire on September 29, 2015, Plaintiff indicated that he prepared meals daily, cleaned, and did laundry. (R. at 385.) At an independent medical examination on October 26, 2015, Plaintiff told consultative examiner Dr. Abrar Siddiqui that he cooked five times a week, cleaned as needed, did laundry, and showered. (R. at 492.) At an ER visit on August 21, 2016, Plaintiff told intake that he worked as a chef, did painting, sanding and odd jobs, and that repetitive motions bothered him. (R. at 512.) At his hearing on March 20, 2019, Plaintiff stated that he worked three days per week for about three hours serving meals and acting as a companion at a church, as part of his county disability work requirement. (R. at 41-42.)

18.  As to Plaintiff's claim of carpal tunnel syndrome, the record shows little treatment for this impairment. At his hearing, he referred to diagnoses of both carpal tunnel syndrome and tennis elbow (lateral epicondylitis). (R. at 89-90.) The record shows that he complained of left arm pain on January 13, 2015, and of left arm weakness on

February 24, 2015. (R. at 548, 550.) He was diagnosed with right arm tennis elbow on November 8, 2015. (R. at 506.) He complained of right arm pain on November 23, 2016. (R. at 530). He began physical therapy for right arm pain but was discharged due to his failure to attend (R. at 573-76). Overall, the record does not show ongoing testing or treatment for either tennis elbow or carpal tunnel syndrome.

19. Based on the record, the ALJ found that Plaintiff's treatment had been routine and conservative. He also noted that Plaintiff was often noted to be in no acute distress and observed that Plaintiff's activities of daily living were evidence of some functional ability. (R. at 21.) For example, despite his complaints of carpal tunnel, Plaintiff had reported lifting, working as a chef, painting, and sanding. (R. at 22.) This Court finds no error in the ALJ's conclusion that Plaintiff's symptoms were "episodic and intermittent" and did not significantly limit his ability to perform basic work functions, so that Plaintiff's conditions were not severe.  (R. at 20.).

20. Plaintiff also argues that medical source statements from his medical providers support a severity determination and that the ALJ erred by giving them little weight.  The record contains medical source statements by two nurse practitioners, a physician's assistant, and a consultative examiner. Both nurse practitioners and physician's assistants are "other medical sources" under the regulations relevant to Plaintiff's application, so their medical opinions do not immediately merit controlling weight as do the opinions of treating physicians. See 20 C.F.R. § 404.1502(a) (defining "acceptable medical source"); Monette v. Colvin, 654 F. App'x 516, 518 (2d Cir. 2016) ("a nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for

8

'controlling weight.'") (quoting 20 C.F.R. § 404.1513(a), (d)(1); id. § 404.1527(a)(2), (c)); see also SSR 06–03p, 2006 WL 2329939, at *1–2 (Aug. 9, 2006).

21. An ALJ must "consider" opinions from other medical sources "using the same factors" considered for the opinion of an acceptable medical source. See 20 C.F.R. § 404.1527 (f)(1). These factors are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of, or amount of explanation for, the opinion, the consistency of the opinion with the record as a whole, and the specialization of the other source. 20 C.F.R. § 404.1527 (c).

22. Here, ALJ gave little weight to the opinions of Physician's Assistant Nancy Murphy, Nurse Practitioner Mercedes Barber, and Nurse Practitioner Melissa Fincher-Mergi.

23. NP Barber stated in notes from a new patient visit on February 24, 2018 that Plaintiff's had a normal gait but cervical, thoracic and lumbar tenderness. (R. at 607-08.) At an office visit following Plaintiff's trip to the ER, she noted that Plaintiff had limited neck range of motion but was in no acute distress and had a normal gait. (R. at 612.) Yet on a check-the-box form filled out for county social services on the same day, she opined that Plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, pushing, pulling, using his hands, and climbing stairs. (R. at 647-48.) On March 15, 2018, less than a month later, another practitioner observed that Plaintiff had neck pain but had full range of motion in his neck and back and a normal gait. (R. at 614.) On August 26, 2018, Barber filled out another checklist and now opined that Plaintiff was only moderately limited in using his hands, with no other limitations. (R. at 713.) On January 4, 2019, Barber opined

9

that Plaintiff had moderate limitation in using his hands, but no other limitations. (R. at 707.)  The ALJ gave Barber's opinions little weight, finding that they were not supported by explanations, and they were inconsistent with Plaintiff's relatively routine treatment. (R. at 22.)

24.     In treatments notes from May 17, 2016, January 27, 2016, and August 8, 2017, PA Murphy noted no musculoskeletal issues. (R. at 539, 542, 521.) In a form from December 14, 2015, Murphy opined that Plaintiff was moderately limited in lifting, carrying, pushing, pulling, bending, using his hands, and using stairs or other climbing. (R. at 632.) In a form from August 23, 2016, she opined that Plaintiff was moderately limited in walking, standing, pushing and pulling. (R. at 630, 719.) The ALJ found that PA Murphy's opinions lacked explanations to support them and were not consistent with a record showing conservative and routine treatment history, often noted lack of distress, only periodic reports of symptom, and his reported activities of daily living. (R. at 22.)

25.     NP Melissa Fancher-Mergi completed medical source statements on August 9, 2017, and September 20. 2017. (R. at 717, 568-70.)  On August 9, 2017, she opined that Plaintiff was moderately limited in lifting, carrying, pushing, and pulling, but not limited in other areas, including standing, walking, sitting, or using his hands. (R. at 717.)  On September 20, 2017, Fincher-Mergi opined, on a different check-the-box form, that Plaintiff's pain would frequently interfere with his attention and concentration, that he could only sit and stand for 20 minutes, sit or walk for less than 2 hours, needed a daily break for 12 hours, could lift up to 10 pounds occasionally, could occasionally hold is head in a static position, and would miss four days of work per month. (R. at 568-570.)  At his first hearing, on October 19, 2017, Plaintiff informed the ALJ that Fancher-Mergi had not

performed a physical exam when filling out the latter form, but had simply written down his answers to the questions on the form. (R. at 84-85.) The ALJ found that the extreme limitations in the September 2017 opinion were inconsistent both with Fincher-Mergi's August 2017 assessment and with the record showing conservative treatment, normal findings, only periodic reports of symptoms, and the extent of Plaintiff's activities of daily living. (R. at 23.) The ALJ thus gave Fancher-Mergi's opinions little weight. (Id.)

26. This Court finds that the ALJ's assessment of these three opinions is supported by substantial evidence. The ALJ was entitled to give less weight to opinions unsupported by medical observations, as the check-the-box forms were, and was further entitled—and in fact required—to consider the consistency of these opinions with the record as a whole. Plaintiff's argument to the contrary is unavailing.

27. Finally, the ALJ gave little weight to the opinion of consultative examiner Dr. Abrar Siddiqui. At an internal medicine examination on October 26, 2015, Dr. Siddiqui observed that Plaintiff was in no acute distress, had a normal stance, and needed no help changing or getting onto the exam table. (R. at 492.) He noted that Plaintiff had 30 degrees flexion/extension of the cervical spine, left and right rotation of 40 degrees, and lateral flexion restricted to 30 degrees due to neck pain. (R. at 491.) He noted that plaintiff was able to cook 5 times per week, clean as needed, do laundry, shower and dress himself, and socialize. (Id.) Dr. Siddiqui then opined that Plaintiff had mild to moderate restrictions in the ability to lift, push, pull, and carry heavy objects. (R. at 492.)

28. The ALJ did not find Dr. Siddiqui's opinion on Plaintiff's limitations to be consistent with Dr. Siddiqui's own observations or with Plaintiff's generally normal consultative examination (aside from the reduced range of motion in the cervical spine).

He also found it inconsistent with the conservative nature of Plaintiff's treatment, with the normal musculoskeletal findings at multiple visits, and with Plaintiff's daily activities. (R. at 23-24.)  As above, this Court finds that the ALJ properly considered the consistency of Dr. Siddiqui's opinion with the record in determining the weight to give it. Further, the ALJ was not bound to accept every element of Dr. Siddiqui's opinion, but was "entitled to exercise discretion in reviewing the record evidence in its totality and in evaluating [Dr. Siddiqui's] statements about h[is] symptoms and limitations." Barry v. Colvin, 606 F. App'x 621, 624 (2d Cir. 2015).

29.     To carry his or her burden to show that an impairment is severe, a claimant must demonstrate that the impairment affects the ability of a claimant to do basic work activities. 20 C.F.R. § 404.1520(c). Here, although the record contains imaging revealing cervical herniation and retrolisthesis, and complaints of neck and arm pain, there is not convincing evidence of how these issues affected Plaintiff's functioning, and no evidence that these impairments significantly limited Plaintiff's ability to function for one year. See Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Human Servs., 360 Fed. Appx. 240, 243 (2d Cir. 2010) (summary order). The ALJ's severity determination is thus supported by substantial evidence.

30.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      October 26, 2021
            Buffalo, New York

                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge